**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | Case No. 2:26-cv-00304 |
| *Plaintiff,* | **Complaint for Patent Infringement** |
| v. | **JURY TRIAL DEMANDED** |
| AMAZON.COM SERVICES LLC | |
| *Defendant.* | |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., in which Plaintiff Headwater Research LLC ("Headwater") alleges as follows against Defendant Amazon.com Services LLC ("Amazon"):

**INTRODUCTION**

1. This complaint arises from Amazon's unlawful infringement of U.S. Patent Nos. 9,491,564 ("'564 patent"), 11,966,464 ("'464 patent"), and 8,832,777 ("'777 patent") (collectively, "Asserted Patents").

2. The accused products in this case include Amazon devices that support Fire OS, which is the operating system that runs Amazon's Fire TV, Fire tablets, and Echo Show devices, including for example Fire TV Sticks, Fire TV Cubes, and Fire 7, Fire HD 8, Fire HD 10, Fire Max 11, and Kids Editions of Fire 7, Fire HD 8, Fire HD 10, and Fire Max 11 series devices made, offered for sale, imported, and/or sold by Amazon. See https://www.amazon.com/Amazon-Fire-Tablet-Family; https://developer.amazon.com/docs/fire-tv/fire-os-overview.html ("Fire OS is the operating system that runs Amazon's Fire TV and tablets…Most Fire devices receive over-the-air

1

updates to get Fire OS updates automatically. Not every Fire device receives a push of the same Fire OS version at the same time. The updates often roll out to different devices at different times"). Fire OS provides users with Amazon's services, including, for example, Amazon account services, Amazon Appstore services, Appstore billing, Amazon in-app purchasing, Login with amazon and authentication services, Prime services, privacy services, parental control services, payment services, access control services, Fire OS services, Amazon Kids services, or location services, as examples. For example, Fire OS automatically has users register the Fire device and associate it to a user's Amazon, Fire, and/or Prime account and connect to a wireless network and to Amazon's backend. Fire OS automatically has users set up or select settings, such as a customer profile, a device PIN, control or access PINs, settings relating to Amazon app store, Alexa, Prime, cloud backup. Fire OS devices allow users to download first- and third-party applications. Amazon uses Amazon backend services for Fire OS to facilitate authentication procedures, billing, app store capabilities, and settings relating to Amazon services and applicable to Fire OS device usage.

3.      In addition to Fire OS, another core aspect of Amazon's technology stack for Fire OS devices is Amazon Device Messaging ("ADM"). As detailed below, Amazon reaps substantial revenues and competitive advantages from Fire OS, ADM, and its infringement of the Asserted Patents. ADM provides the only push channel for Fire tablets, Fire TV, Echo Show, and other Amazon-branded devices. Every app developer that wants to send real-time push messages on those devices must integrate ADM. Amazon also uses ADM for first-party Amazon or Fire OS related services.

4.      Amazon uses ADM to push deal alerts, Prime Video trailers, Kindle Daily Deals, etc., and to re-engage "cart abandon" users. Push notifications have dramatically higher open-rates than    email/SMS,    which    translates    into    more    conversions    and    time-on-device.

2

https://aws.amazon.com/blogs/messaging-and-targeting/push-notification-engagement-metrics-tracking/ ("Push notifications is a preferable channel of communication as it notifies your app users even when they are not on your app. This increases app engagement and probability of customers to convert. Additionally, users who download your app but don't register, can still be targeted and receive your messages.").

5.      ADM keeps Amazon devices awake and reachable, enabling Amazon to further drive and monetize engagement through delivery of lock-screen/wake-screen ads and notifications intended to prompt continued device usage.

6.      Amazon also uses ADM to collect behavioral user data and generate additional revenue. *Id*. ("Measuring success of your communications is paramount for optimizing future customer engagements. Amazon Pinpoint push notifications offer the following three events: _opened_notification – This event type indicates that the recipient tapped the notification to open it; _received_foreground – This event type indicates that the recipient received the message as a foreground notification; _received_background – This event type indicates that the recipient received the message as a background notification.").

7.      On information and belief, Amazon's revenues derived from Fire OS, ADM and Fire OS- and/or ADM-enabled devices extend well into the billions of dollars.

## BACKGROUND REGARDING HEADWATER AND DR. RALEIGH

8.      Dr. Gregory Raleigh—the inventor of the Asserted Patents—is a world-renowned scientist, inventor, and entrepreneur, with over 25 years of executive experience in several technology sectors, including networking, cloud software, consumer services, wireless and military systems. Dr. Raleigh holds Ph.D. and Masters degrees in Electrical Engineering from Stanford University, and is the inventor of over 350 issued U.S. and international patents in several

fields including radio systems and components, radar, mobile operating systems, cloud services, IoT, networking, consumer electronics, radiation beam cancer therapy and medical imaging.

9. Dr. Raleigh has a long and distinguished record of significant contributions and advancements in wireless communications technology. His inventions, companies, and products have profoundly and positively impacted virtually every aspect of the mobile device and communications market. In 2005, Dr. Raleigh was named one of the "50 most powerful people in networking" because of his discoveries in wireless technology, and his work in multiplying the capacity of a radio link using multiple transmission and receiving antennas to exploit multipath propagation was described as the "most important wireless technology in the works." *See* https://web.archive.org/web/20220628132409/https://www.networkworld.com/article/2316916/the-50-most-powerful-people-in-networking.html?page=2.

10. In 1996, while at Stanford University, Dr. Raleigh presented the first mathematical proof demonstrating that multiple antennas may be used with special signal processing techniques to transmit multiple data streams at the same time and on the same frequency while in the presence of naturally occurring multipath propagation. Dr. Raleigh's work at Stanford has been widely adopted in modern multiple-input and multiple-output ("MIMO") radio communication and implemented in major wireless communication standards including 4G and 5G. *See, e.g.*, https://en.wikipedia.org/wiki/Gregory_Raleigh.

11. Dr. Raleigh's groundbreaking work solved problems that had existed in wireless communication since the late 1800s and overturned a century of research and practice in the fields of radio science and wireless communication theory. His work revealed that a new class of MIMO signal processing architectures would allow wireless devices to transmit multiple data streams at the same time on the same frequency thereby multiplying the capacity of wireless networks.

12.     Based on his discoveries, Dr. Raleigh co-founded Clarity Wireless to develop smart antenna products incorporating the advances of his MIMO signal processing architecture, and obtained patents now used in 4G and 5G cellular and Wi-Fi standards. Field trials of the smart antennas developed by Clarity Wireless demonstrated performance significantly above anything else contemplated at the time and continue to set standards for multipath broadband wireless access links. Shortly after those field trials, Cisco acquired Clarity in 1998 and hired Dr. Raleigh to continue to commercialize these technologies.

13.     After leaving Cisco, Dr. Raleigh founded Airgo Networks to develop the world's first MIMO wireless chipsets, networking software, reference design systems and commercial OEM products. Airgo Networks' chipset products significantly improved the speed and reliability of Wi-Fi, leading to the adoption of its technology as the core of Wi-Fi radio standards since 2006, and adoption of the chipsets into products sold across the globe. In 2006, Qualcomm acquired Airgo Networks and hired Dr. Raleigh to continue to commercialize these technologies. The Airgo team at Qualcomm spearheaded the creation of Wi-Fi standards and developed the first Qualcomm Wi-Fi chips for cell phones.

14.     Dr. Raleigh's innovations at Clarity Wireless, Cisco, Airgo Networks, and Qualcomm, resulted in widespread adoption of his technologies in a multitude of cellular and Wi-Fi standards, such as LTE, WiMAX, 802.11n, 802.11ac (Wi-Fi 5), and 802.11ax (Wi-Fi 6).

15.     After successfully founding and selling Clarity Wireless and Airgo Networks to Cisco and Qualcomm, respectively, Dr. Raleigh shifted his focus from solving radio-centric problems to solving problems in how wireless services are provided to consumers. Dr. Raleigh foresaw significant data demand problems presented by the advent and adoption of smartphones.

He sought to solve these data demand problems by improving end-user wireless devices and the services that support them.

16.     In 2008, Dr. Raleigh formed Headwater to develop mobile operating systems and cloud technology, which today, underpin the mobile phone and app industries. The patents in this action describe and claim some of the extraordinary inventions developed by Dr. Raleigh.

## PLAINTIFF HEADWATER AND THE ASSERTED PATENTS

17.     Plaintiff Headwater was formed in 2011 and has been in continued existence and operation since that time. Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

18.     Headwater is the owner of U.S. Patent No. 9,491,564, entitled "Mobile device and method with secure network messaging for authorized components," which issued on November 8, 2016. A copy of the '564 patent is attached to this complaint as Exhibit 1.

19.     Headwater is owner of U.S. Patent No. 11,966,464, entitled "Security techniques for device assisted services," which issued on April 23, 2024. A copy of the '464 patent is attached to this complaint as Exhibit 2.

20.     Headwater is owner of U.S. Patent No. 8,832,777, entitled "Adapting network policies based on device service processor configuration," which issued on Sept. 9, 2014. A copy of the '777 patent is attached to this complaint as Exhibit 3.

## DEFENDANT AMAZON AND THE ACCUSED INSTRUMENTALITIES

21.     On information and belief, Defendant Amazon.com Services LLC is a Delaware limited liability company with a principal place of business at 410 Terry Avenue North, Seattle, WA 98109.

22.     The Accused Instrumentalities include Amazon's devices that support Fire OS

6

and/or Amazon Device Messaging ("ADM") and any/all versions and variations thereof since the issuance of the Asserted Patents, including, without limitation, Fire OS devices, Fire TV devices (including Fire TV Sticks and Fire TV Cubes), Fire tablets supporting ADM (second-generation Kindle Fire tablets and later, e.g., Fire 7, Fire HD 8, Fire HD 10, and Fire Max 11, and Kids editions of the Fire tablets), Echo Show devices, and any related components, including products identified in Exhibits attached to this complaint.

23.     Defendant infringes by making, using, importing, selling, and/or offering for sale the accused products/instrumentalities. Defendant also uses, operates, places into service, or otherwise controls a system to support Fire OS devices in the United States. Defendant also infringes Headwater's patented technology inducing infringement by end-users of Defendant's accused products/instrumentalities in the United States.

## JURISDICTION AND VENUE

24.     This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq.

25.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

26.     This Court has personal jurisdiction over Amazon in this action because Amazon has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over Amazon would not offend traditional notions of fair play and substantial justice. Amazon, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Eastern District of Texas, regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives

substantial revenue from products and/or services provided to individuals in Texas, and commits acts of infringement of Headwater's patents in this District by, among other things, supplying, distributing, developing, making, using, offering to sell, and selling ADM-enabled devices and ADM-related services, and by using push messaging for Amazon mobile applications offered for sale and/or sold and/or monetized in the United States. Defendant operates, places into service, or otherwise controls a system to push messages to applications on Android devices in the United States.

27.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Amazon resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District, including through Amazon's sales in this District and/or Amazon's providing services to Fire OS devices in this District. Amazon also maintains regular and established places of business in this District, including, for example, its DDF1, DDF5, DDX2, DDX7, DFW2, and WPT2 facilities. These facilities employ hundreds if not thousands of individuals in this District, and Amazon continues to hire more personnel at these facilities today. *See, e.g.*, https://www.amazon.jobs/en/jobs/SF240111711/delivery-station-customer-service-associate-ft-40-hours-ddx2-mckinney-tx; https://hiring.amazon.com/jobDetail/en-US/Amazon-Delivery-Station-Warehouse-Associate/Forney/a0R4U00000DKPKBUA5#/jobDetail?jobId=a0R4U00000DKPKBUA5&locale=en-US&seoIndex=1; https://hiring.amazon.com/jobDetail/en-US/Amazon-Delivery-Station-Warehouse-Associate/Lewisville/a0R4U00000EV4V9UAL#/jobDetail?jobId=a0R4U00000EV4V9UAL&locale=en-US&seoIndex=1. Amazon uses push notifications and the patented technologies at its

facilities in this District. Amazon also uses Fire OS devices and the patented technologies at its facilities in this District. See, e.g., https://www.aboutamazon.com/news/operations/5-things-you-dont-know-about-safety-in-amazon-warehouses ("The TDR app for Fire tablets helps improve safety while associates are working in the trailer yard. TDR is a job at Amazon that only certified associates who have gone through training are allowed to do. Associates can use the Fire tablet to perform a series of checks before they let the trailer depart from the dock door.").

28.    On information and belief, Amazon operates Fire OS related servers and/or ADM servers in this District, which act as the always-on ADM ingress and egress points for ADM-enabled devices (e.g., Fire OS devices, Fire TV sticks, Echo Show units, and other Amazon-branded devices) in this District. These servers maintain a persistent channel with each device through which ADM push messages are sent.

### COUNT 1 – INFRINGEMENT OF THE '564 PATENT

29.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

30.    On November 8, 2016, the United States Patent and Trademark Office issued U.S. Patent No. 9,491,564, entitled "Mobile device and method with secure network messaging for authorized components."  Ex. 1.

31.    Headwater is the owner of the '564 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

32.    The written description of the '564 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time

of the invention.

33.     Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '564 patent, and Headwater is entitled to damages for Defendant's past infringement.

34.     Amazon has directly infringed (literally and equivalently) and induced others to infringe the '564 patent by making, using, selling, offering for sale, or importing products, services, and systems that infringe the claims of the '564 patent and by inducing others to infringe the claims of the '564 patent without a license or permission from Headwater, such as for example instructing users of Defendant's mobile applications to register the Fire OS device to enable push messaging and use of the '564 patent.

35.     For example, attached as Exhibit 4 is a chart setting forth a description of at least one example of Defendant's infringement of at least claim 1 of the '564 patent.

36.     Amazon knowingly and intentionally induces and contributes to infringement of the '564 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, at least since receipt of this Complaint, Amazon has had knowledge of or has been willfully blind to its infringement of the '564 patent.

37.     Despite this knowledge, Amazon continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '564 patent. Amazon does so knowing and intending that their customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '564 patent, thereby specifically intending for and inducing their customers to infringe the '564 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information

and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers to enable push messaging; and indemnifying patent infringement within the United States.

38. Amazon has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '564 patent.

39. The '564 patent claims are valid, enforceable, and claim patent-eligible subject matter. The written description describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is distinct from and improved upon what was conventional, generic, routine, or well-understood at the time of the invention.

40. Headwater has been damaged by Amazon's infringement of the '564 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

### COUNT 2 – INFRINGEMENT OF THE '464 PATENT

41. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

42. On April 23, 2024, the United States Patent and Trademark Office issued U.S. Patent No. 11,966,464, titled "Security techniques for device assisted services." Ex. 2.

43. Headwater is the owner of the '464 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

44. The written description of the '464 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from

11

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

45.     Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '464 patent, and Headwater is entitled to damages for Amazon's past infringement.

46.     Amazon has directly infringed (literally and equivalently) and induced others to infringe the '464 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '464 patent and by inducing others to infringe the claims of the '464 patent without a license or permission from Headwater, such as for example instructing users of Defendant's products to register, set up, and use the Fire OS device and Fire OS or account-related settings.

47.     For example, attached as Exhibit 5 is a chart setting forth a description of at least one example of Defendant's infringement of at least claim 11 of the '464 patent.

48.     Amazon knowingly and intentionally induces and contributes to infringement of the '464 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, at least since receipt of this Complaint, Amazon has had knowledge of or has been willfully blind to its infringement of the '464 patent.

49.     Despite this knowledge, Amazon continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '464 patent. Amazon does so knowing and intending that their customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '464 patent, thereby specifically intending for and inducing their customers to infringe the '464 patent through the normal and customary use of the

Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

50. Amazon has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '464 patent.

51. The '464 patent claims are valid, enforceable, and claim patent-eligible subject matter. The written description describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is distinct from and improved upon what was conventional, generic, routine, or well-understood at the time of the invention.

52. Headwater has been damaged by Amazon's infringement of the '464 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

### COUNT 3 – INFRINGEMENT OF THE '777 PATENT

53. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

54. On Sept. 9, 2014, the United States Patent and Trademark Office issued U.S. Patent No. 8,832,777, titled "Adapting network policies based on device service processor configuration." Ex. 3.

55. Headwater is the owner of the '777 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

56. The written description of the '777 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how

13

the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57.     Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '777 patent, and Headwater is entitled to damages for Amazon's past infringement.

58.     Amazon has directly infringed (literally and equivalently) and induced others to infringe the '777 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '777 patent and by inducing others to infringe the claims of the '777 patent without a license or permission from Headwater, such as for example instructing users of Defendant's products to register, set up, and use the Fire OS device and Fire OS or account-related settings.

59.     For example, attached as Exhibit 6 is a chart setting forth a description of at least one example of Defendant's infringement of at least claim 1 of the '777 patent.

60.     Amazon knowingly and intentionally induces and contributes to infringement of the '777 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, at least since receipt of this Complaint, Amazon has had knowledge of or has been willfully blind to its infringement of the '777 patent.

61.     Despite this knowledge, Amazon continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '777 patent. Amazon does so knowing and intending that their customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the 777 patent, thereby specifically intending for and

inducing their customers to infringe the '777 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

62.    Amazon has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '777 patent.

63.    The '777 patent claims are valid, enforceable, and claim patent-eligible subject matter. The written description describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is distinct from and improved upon what was conventional, generic, routine, or well-understood at the time of the invention.

64.    Headwater has been damaged by Amazon's infringement of the '777 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## JURY DEMAND

65.    Headwater demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Headwater prays for the following relief:

A.    A judgment in favor of Headwater that Amazon has infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B.    A judgment and order requiring Amazon to pay Headwater past and future damages arising out of Amazon's infringement of the Asserted Patents in an amount no less than a

reasonable royalty, costs, expenses, and pre- and post-judgment interest, as provided under 35 U.S.C. § 284;

C.    A judgment and order requiring Amazon to provide an accounting and to pay supplemental damages to Headwater, including, without limitation, pre-judgment and post-judgment interest;

D.    A judgment that Amazon's infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

E.    A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Headwater's reasonable attorney's fees and costs; and

F.    Any and all other relief to which Headwater may be entitled.

Dated:   April 16, 2026

Respectfully submitted,

/s/ *Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James N. Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**